UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| JAZMYN FINISTER,<br><br>　　　　Plaintiff,<br><br>　　　v.<br><br>CALIFORNIA CHECK CASHING STORES, LLC,<br><br>　　　　Defendant. | Case No. 23-cv-02692-LB<br><br>**ORDER DENYING MOTION TO REMAND**<br><br>Re: ECF No. 9 |

### INTRODUCTION

Plaintiff Jazmyn Finister sued her former employer, defendant California Check Cashing Stores, LLC, claiming disability discrimination, harassment, and wrongful termination (among other claims) in violation of California law. The defendant timely removed the case from state court, asserting diversity jurisdiction. The plaintiff then moved to remand for lack of diversity jurisdiction. The court denies the motion: the parties are diverse, and the amount in controversy exceeds $75,000.

# STATEMENT

The plaintiff is a citizen of California.[1] The defendant is a limited-liability company incorporated in Delaware with a principal address in Ohio. Its sole member is CCCS Holdings, LLC, and the sole member of CCCS Holdings, LLC, is CCCS Corporate Holdings, Inc. CCCS Corporate Holdings, Inc., is a Delaware corporation with a principal place of business in Ohio.[2]

The plaintiff worked as a customer-service representative for the defendant from June 2022 to November 18, 2022. She worked nine or more hours a day and earned $18 an hour.[3] Even if she worked only eight hours a day for forty hours a week (fewer hours that she alleges in the complaint), she would have earned $720 a week.[4] Backpay from termination to the date she filed her complaint on April 20, 2023, is $15,840.[5] Backpay from termination to the date of removal on May 31, 2023 (about 27 weeks) is $19,440. Assuming conservatively that she has a trial by April 2024, backpay from termination through trial is $15,840 (through April 20, 2023) plus an additional 52 weeks ($37,440) for a total of $53,280.[6]

If one assumes a year of front pay from the trial date, then that is an additional $37,440.[7]

The plaintiff alleges disability discrimination, harassment, and wrongful termination, and resulting damages.

First, during her employment, her manager Lilly told her "multiple times" that her team was to be replaced. She characterizes that as discrimination and a hostile work environment.[8]

---

[1] Compl. – ECF No. 1-1 at 3 (¶ 2). Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] *Id.* (¶ 3); Cal. Sec'y of State Business Search, https://bizfileonline.sos.ca.gov/search/business; Desilets Decl. – ECF No. 2 at 2 (¶ 3). The court judicially notices the state website's corporate records. Fed. R. Evid. 201; *Lee v. City of Los Angeles*, 250 F.3d 668, 689–90 (9th Cir. 2001).

[3] Compl. – ECF No. 1-1 at 5 (¶ 11), 6 (¶ 21).

[4] Notice of Removal – ECF No. 1 at 6 (¶ 24).

[5] *Id.* (¶ 25).

[6] *Id.* at 7 (¶¶ 26–27). The court almost always cannot set a trial within a year of filing. The scheduling order issues at the initial pretrial conference.

[7] *Id.* (¶ 28).

[8] Compl. – ECF No. 1-1 at 5 (¶ 12).

Second, the plaintiff slipped at work on October 6, 2022, was injured badly, had "a lot of back pain," and had to crawl to the bathroom to call management. Her manager Lilly denied her request to leave work early until another worker arrived, and she worked with "unbearable pain" until the replacement arrived (apparently around an hour and half later).[9] She then called her district manager Bill Yaeger, who told her to go the emergency room. At the Alta Bates emergency room, she was told to rest at home until October 10, 2022, and to avoid bending or lifting heavy objects.[10] On October 10, 2022, when her pain did not improve, she saw her primary-care provider, West Oakland Health Clinic, "where she was advised not to resume her normal routine until October 22, 2022."[11] She "returned to her normal routine," but store manager Rabecca Jenkins told her that "Lilly was finding a reason to terminate [her] while she was on medical leave."[12] In the plaintiff's absence, Lilly "also told her team that [the] [p]laintiff would not be returning to work for whatever reason."[13] The defendant terminated her employment on November 18, 2022. She asked for a termination letter, "but it was never provided." Wages for her medical leave (from October 6 to October 22, 2022) "were not paid" either.[14]

Third, the plaintiff's managers harassed her by making "derogatory remarks that [she] had dyslexia." Mr. Yaeger called the plaintiff and another former employee dyslexic when they "accidentally switched a few numbers," but the plaintiff "did not have dyslexia."[15]

As a result, the plaintiff suffered physical and mental pain, including emotional distress.[16]

The plaintiff brings seven claims against her former employer: (1) disability discrimination by firing her after her October 6, 2022, accident, in violation of Cal. Gov't Code § 12940(a); (2) failure to accommodate her disability by requiring her to work on the day that she was injured, not

---

[9] *Id.* at 5–6 (¶¶ 13–16).
[10] *Id.* at 6 (¶ 17).
[11] *Id.* (¶ 18).
[12] *Id.* (¶ 19).
[13] *Id.* (¶ 20).
[14] *Id.* (¶ 21).
[15] *Id.* (¶¶ 22–23).
[16] *Id.* (¶ 24).

accommodating her work-related restrictions after she returned to work, and firing her because of her disability, in violation of Cal Gov't Code § 12940(m); (3) not engaging in the interactive process required to accommodate a known disabled employee who could perform — with a reasonable accommodation — her job, in violation of Cal. Gov't Code § 12940(n); (4) harassment by creating a hostile work environment (a) based on the plaintiff's appearance and manner of speaking and (b) by failing to take reasonable steps to prevent disability discrimination and harassment, both in violation of Cal. Gov't Code § 12940; (5) wrongful termination in violation of public policy by terminating her for her disability; (6) failing to take reasonable and necessary steps to prevent and correct discrimination and harassment, in violation of Cal. Gov't Code § 12940; and (7) intentional infliction of emotional distress based on the discriminatory conduct.[17] She asks for compensatory damages, punitive and exemplary damages, attorney's fees and costs awardable under Cal. Gov't Code § 12965(b) and "any other applicable provisions providing for attorney's fees and costs," declaratory relief, and pre- and post-judgment interest.[18]

The defendant timely removed the action (after being served on May 1, 2023) on May 31, 2023, asserting diversity jurisdiction.[19] 28 U.S.C. § 1446(b)(1). The plaintiff moved to remand for lack of diversity jurisdiction.[20] The parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 636.[21] The hearing was on August 10, 2023, but the plaintiff did not appear. The court can decide the motion without oral argument. N.D. Cal. Civ. L. R. 7-1(b).

## ANALYSIS

A defendant may remove a case to federal court if the plaintiff could have filed the case here, meaning, if the court has federal-question or diversity jurisdiction. 28 U.S.C. § 1441(a); *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Because district courts are courts of limited jurisdiction,

---

[17] *Id.* at 7–18 (¶¶ 25–100).

[18] *Id.* at 18.

[19] Notice of Removal – ECF No. 1 at 2.

[20] Mot. – ECF No. 9.

[21] Consents – ECF Nos. 13, 15.

courts construe the removal statute strictly and reject federal jurisdiction if there is any doubt as to the right of removal. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The removing party has the burden of establishing the court's jurisdiction. *Ethridge v. Harbor House Rest.*, 861 F.2d 1389, 1393 (9th Cir. 1988).

The claims here do not invoke federal-question jurisdiction. The issue thus is diversity jurisdiction. For diversity jurisdiction, the amount in controversy must "exceed[] the sum or value of $75,000, exclusive of interest and costs," and there must be complete diversity of citizenship between opposing parties. 28 U.S.C. § 1332(a)(1); *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996).

The first issue is whether the parties are diverse. They are.

"For purposes of diversity jurisdiction, an LLC — or other unincorporated association — has the citizenship of all of its owners/members." *Motu Novu, LLC v. Percival*, No. 16-cv-06545-SBA, 2018 WL 3069316, at *8 (N.D. Cal. May 7, 2018) (citing *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006) and *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 586 (2004)). A corporation is "a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1).

In the case of removal, diversity must be "determined as of the time the complaint [was] filed and [as of] the time of removal." *Harris v. United Parcel Serv., Inc.*, No. C-08-0315 MMC, 2008 WL 506141, at *1 (N.D. Cal. Feb. 22, 2008) (citing *Strotek Corp. v. Air Transp. Ass'n of Am.*, 300 F.3d 1129, 1131 (9th Cir. 2002)).

The plaintiff is a citizen of California. The defendant is an LLC: Its sole member is CCCS Holdings, LLC, and CCCS Holdings, LLC's sole member is CCCS Corporate Holdings, Inc., a Delaware corporation with its principal place of business in Ohio.[22] The defendant thus is a citizen of Delaware and Ohio. The parties are diverse.

The next issue is whether the defendant established the amount in controversy. It did.

---

[22] *See supra* Statement; Desilets Decl. – ECF No. 2 at 2 (¶ 3) (filed in support of the notice of removal). The plaintiff did not reply to the defendant's opposition, which identified these jurisdictional facts.

"The amount in controversy includes claims for general and special damages (excluding costs and interests), attorney[']s fees if recoverable by statute or contract, and punitive damages if recoverable as a matter of law." *J. Marymount, Inc. v. Bayer Healthcare, LLC*, No. C 09-03110 JSW, 2009 WL 4510126, at *2 (N.D. Cal. Nov. 30, 2009). Where "it is unclear or ambiguous from the face of a state-court complaint whether the requisite amount in controversy is pled, the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional threshold." *Urbino v. Orkin Servs. of Cal., Inc.*, 726 F.3d 1118, 1121–22 (9th Cir. 2013) (cleaned up).

When the plaintiff does not dispute the amount in controversy, "[a] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014). But if the plaintiff contests the amount in controversy, then "[e]vidence establishing the amount is required," and "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* at 88–89; *see Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019) ("[W]hen a defendant's allegations of removal jurisdiction are challenged, the defendant's showing on the amount in controversy may rely on reasonable assumptions.")."The parties may submit evidence outside the complaint, including affidavits or declarations, or other summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (cleaned up).

The parties dispute whether backpay (for the jurisdictional inquiry) is from the date of discharge to the date of removal or from the date of discharge to the date of trial. The plaintiff cites a Central District case calculating backpay through the date of removal and front pay thereafter, and the defendant cites Northern District cases that — without analyzing the removal issue — calculate backpay through trial. The plaintiff also challenges front pay as speculative because the plaintiff's duty to mitigate may preclude an award of front pay.[23]

---

[23] Mot. – ECF No. 9 at 8–10; Opp'n – ECF No. 11 at 10–11.

To support her backpay argument, the plaintiff cites *Olvera v. Quest Diagnostics*, No. 2:19-cv-06157-RGK-(SK), 2019 WL 6492246, at *2 (C.D. Cal. Dec. 2, 2019). There, to determine the amount in controversy, the court calculated backpay through the date of removal, noting that "[f]or purposes of determining the amount in controversy, courts have considered back pay as the wages lost from the date of termination to the time of removal, and front pay as the wages lost from the date of removal until trial." *Id.* (citing *Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1032 (N.D. Cal. 2002)). *Simmons* did not address the issue: it identified lost wages of $26,500 but held — without analyzing the front pay/backpay issue — that the removing defendant established the amount in controversy because wage loss by trial was $56,000, and attorney's fees and other relief made up the rest. *Simmons*, 209 F. Supp. 2d at 1031–34; *accord Williams v. Am. Airlines, Inc.*, No. 19-cv-08434-JSC, 2020 WL 1330388, at *4 (N.D. Cal. Mar. 23, 2020) (finding, without analyzing the front pay/backpay issue, that backpay at the time of removal exceeded $200,000); *Dep't of Fair Empl. & Hous. v. Lucent Techs., Inc.*, No. C 07-3747 PJH, 2007 WL 2947421, at *3 (N.D. Cal. Oct. 9, 2007) (finding — without analyzing the front pay/backpay issue — that backpay at the time of removal exceeded the jurisdictional requirement).

The defendant counters with a case in the Northern District that calculated backpay through trial, but it is not a removal case. *See Andrade v. Arby's Rest. Grp., Inc.*, 225 F. Supp. 3d 1115, 1140 (N.D. Cal. 2016) (in a case filed initially in federal court, the court held that back pay is "lost-wages damages through the time of trial"). The defendant's other cases are from the Central and Eastern Districts and do not analyze the front pay/backpay issue directly. *See, e.g.*, *Arauz v. MAC Cosmetics, Inc.*, No. 2:22-cv-01663-MCE-KJN, 2023 WL 3293336, at *2 (E.D. Cal. May 5, 2023) (calculated backpay through a hypothetical trial date one year from the date of removal); *Adkins v. J.B. Hunt Transp., Inc.*, 293 F. Supp. 3d 1140, 1144 (E.D. Cal. 2018) (the defendant calculated, and the court accepted without analyzing the issue, backpay through the date of removal and front pay thereafter); *Harrod v. Bass Pro Outdoor World, L.L.C.*, No. EDCV 17-02386-CJC(SHK), 2018 WL 705541, at *2 (C.D. Cal. Feb. 5, 2018) ("On Plaintiff's FEHA claims, she can seek an award of back pay from the time of the unlawful adverse action until the

date of judgment, as well as front pay for the time after trial.") (citing without further analysis the non-removal case *Andrade*, 225 F. Supp. 3d at 1139–40).

The court's modest additional research did not uncover other cases. But from the court's review of the cases cited by the parties, most defendants calculate backpay through the date of removal and calculate pay at least to a hypothetical trial date a year from removal. Here, that analysis yields $56,880 through a hypothetical trial a year from removal (backpay through removal of $19,440 plus $37,440 for an additional 52 weeks until trial). *See Olivera*, 2019 WL 6492246, at *2 (when no trial date has been set, "courts in employment cases have found that a year from the date of removal is a conservative estimate for front pay") (collecting cases); *accord Simmons*, 209 F. Supp. 2d at 1031–32 (analyzing wage loss through trial). (A trial date a year out from removal is a conservative estimate. Usually the earliest that the court can set a trial date is one year from the date of the initial case-management conference. Even that timeline is ambitious.)

As to the plaintiff's contention that front pay is speculative because she can mitigate damages, she seeks backpay and front pay.[24] In similar circumstances, courts have rejected the mitigation argument and considered similar pay to establish the amount in controversy, holding that "the amount in controversy is not the same as the amount ultimately recovered." *Olvera*, 2019 WL 6492246, at *3 (collecting cases). "As a result, affirmative defenses, counterclaims, and potential offsets may not be considered as part of the amount in controversy." *Id.* (collecting cases). *But see Lamke v. Sunstate Equip. Co.*, 319 F. Supp. 2d 1029, 1033 (N.D. Cal. 2004) (the court should engage in an inquiry to assess mitigation of damages under the preponderance-of-the-evidence test) (citing *Riggins v. Riggins*, 415 F.2d 1259, 1261–62 (9th Cir. 1969), where the court "considered whether the statute of limitations would render the plaintiff's claim less than the jurisdictional amount"). But here, when the plaintiff has not claimed that she has mitigated damages, the defendant "need not prove, by a preponderance of evidence, that Plaintiff did not mitigate in order to satisfy its burden." *Rivera v. Costco Wholesale Corp.*, No. C 08-02202 CW, 2008 WL 2740399, at *3 (N.D. Cal. July 11, 2008). "Without some evidence of mitigation to disprove, it is sufficient

---

[24] *See, e.g.*, Compl. – ECF No. 1-1 at 8 (¶ 35).

ORDER – No. 23-cv-02692-LB               8

for [the defendant] to present evidence of [the plaintiff's] salary at the time of his termination." *Id.* Thus, the amount in controversy is at least $56,880 through a hypothetical trial date a year after removal.

Also, the defendant cited cases establishing that awards of front pay can span years.[25] Even a year's front pay from the hypothetical trial date results in an amount in controversy that exceeds $75,000.

The amount in controversy also includes emotional-distress damages, punitive damages, and attorney's fees.

Emotional-distress damages can be considered, even if they are not pleaded clearly in the complaint. *Miller v. Mich. Millers Ins. Co.*, NO. C-96-4480-MHP, 1997 WL 136242, at *5 (N.D. Cal. 1997): *Abikhalil v. Am. Med. Response Ambulance Serv., Inc.*, No. CV 15-9358 PSG (PJWx), 2016 WL 429764, at *2 (C.D. Cal. Feb. 2, 2016) ("Courts may consider emotional distress damages when determining the amount in controversy."). The plaintiff seeks emotional-distress damages.[26] She also has a standalone claim for intentional infliction of emotional distress.[27] The defendant collects jury awards in cases involving similar disability claims where juries award substantial non-economic damages that exceed the $75,000 amount in controversy.[28]

The plaintiff also claims punitive damages and attorney's fees, which are recoverable under the statutes at issue here. The defendant collected cases showing punitive damages awards in discrimination and wrongful-termination cases, and it similarly cited cases showing sizable attorney's fees awards in similar cases.[29]

The defendant has met its burden to establish that the amount in controversy exceeds $75,000.

---

[25] Notice of Removal – ECF No. 1 at 7 (¶ 28) (collecting cases awarding front pay awards through retirement, for two years, and three years of salary and benefits or four years of salary).

[26] *See, e.g.*, Compl. – ECF No. 1-1 at 8 (¶ 36).

[27] *Id.* at 17–18 (¶¶ 94–100).

[28] Notice of Removal – ECF No. 1 at 7–9 (¶ 29).

[29] *Id.* at 11–12 (¶¶ 35–38).

# CONCLUSION

The court denies the motion to remand and denies the plaintiff's request for attorney's fees as moot. This resolves ECF No. 9.

**IT IS SO ORDERED.**

Dated: August 11, 2023

LAUREL BEELER
United States Magistrate Judge